# MOSKOWITZ COLSON
# GINSBERG SCHULMAN

Moskowitz Colson
Ginsberg & Schulman LLP

80 Broad Street, Suite 1900
New York, NY 10004

(212) 257-6455
www.mcgsllp.com

April 13, 2023

**By ECF**
Hon. Gregory H. Woods
U.S. District Judge
U.S. Courthouse
500 Pearl Street
New York, N.Y. 10007

Re: U.S. v. Rakeem Wilson
23 Cr. 5 (GHW)

Dear Judge Woods:

      Rakeem Wilson ("Rakeem") never had a chance at a normal life. His father, a drug dealer, was in and out of jail throughout his childhood. His mother, a crack addict, was too addled to care for him. In their absence, Rakeem was raised by his great grandmother, who passed away when he was fourteen years old, leaving him in the custody of his well-intentioned but overwhelmed aunt. With no parental guidance and no positive male role models in his life, Rakeem soon fell prey to the street life, joining a gang that offered him the "family" that he otherwise lacked. Predictably, Rakeem's gang family guided him into criminality which ultimately led to his incarceration for the last twelve years.

      Despite his tragic upbringing and numerous mistakes, Rakeem has made progress and has demonstrated that, if given the opportunity, he is capable of becoming a productive member of society. Indeed, before he foolishly decided to leave the halfway house where he was completing his federal sentence, Rakeem was working full-time at a job that would welcome him back upon his release and had secured an even better job at UPS that he lost when he could not get a pass from the halfway house to attend the required orientation sessions. Throwing Rakeem back into prison for an additional period will not serve any useful purpose. All it will do is make it even harder for him to continue on the road to rehabilitation that he had begun before this arrest. Accordingly, at the time of sentencing, the defense will request that the Court impose a sentence of time-served and allow Rakeem to return to the halfway house to complete the time remaining on his initial sentence.

Hon. Gregory H. Woods
April 13, 2023

## The Offense Conduct

The offense conduct is accurately described in the Presentence Investigation Report ("PSR") prepared by the Probation Department and thus, will not be discussed at length herein. What is important to note however, is that Rakeem's foolish decision to leave the halfway house was the rash decision of an immature and inexperienced young man and not the considered decision of a worldly and wise adult. As Rakeem told the Probation Department, the sequence of events leading up to Rakeem's departure from the halfway house began when he smoked marijuana as a "coping" mechanism when he became depressed after finding out he had lost the new job he had just obtained at UPS, which offered a significantly better wage and more possibilities for advancement than any job he had ever had. Significantly, he didn't lose the job because of any misconduct or fault of his own. Instead, he lost the opportunity solely because the halfway house failed to process his application for a pass in a timely fashion, forcing Rakeem to choose between leaving the facility without authorization in order to go to work or instead, obeying the facility's rules at the cost of losing the new job he had worked hard to obtain. Wisely, Rakeem chose to stay at the facility, miss the new-employee orientation session he was scheduled to attend, and lose the job. Unwisely, he also chose to cope with his disappointment by self-medicating with marijuana, which is now legal in New York but still forbidden by federal law and by the rules of the halfway house. As expected, because it takes approximately one month for marijuana to clear a person's system, smoking marijuana just once led Rakeem to fail two successive drug tests that were administered in consecutive weeks. Having heard from a staff member and a fellow inmate that two positive drug tests was grounds for being returned to prison, Rakeem panicked and fled the halfway house.

Although Rakeem's poor judgment does not excuse his behavior, it does put it in context. Rakeem did not leave the halfway house because he was looking to escape from serving the remainder of his initial sentence. As a child of the streets who grew up without any parental guidance, Rakeem did not know how to extricate himself from the trouble he had gotten himself into. Unable to face the possibility of being returned to prison and lacking the life skills to negotiate a reasonable resolution to the problem he created for himself, Rakeem fled. Of course, that just made the situation worse and ultimately led to his appearance before this Court. It is respectfully submitted that Rakeem's lapses in judgment, first in smoking marijuana and then in leaving the halfway house, should not obscure the progress he made at the halfway house, first by getting and maintaining fulltime employment at Dolla$ignMe, a fashion brand and boutique store in Yonkers, and then by securing an even better job at UPS that would have given him a good start on a new life, had a paperwork problem not made it impossible for him to attend orientation and begin working at his new job. Notably, his most recent employer will welcome him back upon his release, and he will therefore be able to resume a productive life immediately upon completion of his sentence, despite having lost the UPS job because of the administrative delay at the halfway house. (See Exhibit A attached hereto.)

Hon. Gregory H. Woods
April 13, 2023

### A. A Below-Guidelines Sentence is Sufficient to Achieve the Statutory Purposes of Sentencing

As the Supreme Court has repeatedly explained, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Peugh v. United States*, 569 U.S. 530, 536, 133 S. Ct. 2072, 2080 (2013) (*quoting Gall v. United States*, 552 U.S. 38, 49 (2007)). A Guidelines sentence cannot be presumed to be reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009); *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (in banc) ("A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense.").

After calculating the appropriate Guidelines range, the Court must apply certain considerations set forth in 18 U.S.C. § 3553, make an individualized assessment, and impose a sentence that is "sufficient, but not greater than necessary" to meet the objectives of federal sentencing. *See* 18 U.S.C. § 3553; *Gall v. United States, supra.* Specifically, the statute requires the Court to consider first the nature and circumstances of the offense and the history and characteristics of the Defendant, after which Section 3553(a) directs the Court to impose a sentence no greater than necessary to achieve certain statutory objectives, including the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; the need for general and specific deterrence; the need to provide the defendant with needed training, medical care, and correctional treatment in the most effective manner; and the need to avoid unwarranted sentence disparities among similarly-situated defendants.

Consideration of these statutory factors is intended to serve, and balance between, the two traditional purposes of sentencing, which are often in tension with one another: society's desire to punish an offender, and the need to enable rehabilitation so that the offender can return to society in a productive role. Under the circumstances of this case, it is respectfully submitted that the statutory objectives of sentencing would best be served by imposing a sentence of time-served rather than the consecutive eight month sentence recommended by the Probation Department.

### 1. A Below Guidelines Sentence is Sufficient to Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment

It is undisputed that Rakeem committed an offense that is deserving of punishment. However, the crime of conviction certainly is not as serious as most of the cases that this Court sees on a daily basis and thus, Your Honor need not impose an additional sentence of incarceration upon Rakeem in order to reflect the seriousness of the offense or to promote just punishment. Rakeem has already been punished for this offense by being sent back to jail since his arrest on October 27, 2022, rather than completing his initial sentence in the halfway house. Indeed, by the time of his sentencing, Rakeem will have done an additional six months in jail as a result of this offense. If he is not re-released to a halfway house, he will do a total of approximately eleven additional months in jail on his initial sentence before he is released.

Hon. Gregory H. Woods
April 13, 2023

Accordingly, it is not necessary to impose an additional sentence of incarceration on Rakeem in order to reflect the seriousness of the crime or to provide just punishment.

Nor is an additional sentence of incarceration necessary in order to promote respect for the law. Rakeem's foolish decision to leave the halfway house was not done with malicious intent to violate the law, but rather, was the panicked decision of an immature young man who has grown up with no parental guidance and only a minimum amount of adult supervision. Rakeem grew up in the streets and has spent nearly half his life in prison. He has no experience navigating his way out of trouble and has no trust that the system will treat him fairly. His decision to run away from the problem that he created by smoking marijuana rather than face the potential consequences is understandable given his life experience. What Rakeem needs, and what would promote respect for the law, would be a sentence that reflects an understanding of his tragic background and his need to be taught how to deal with his problems instead of running away from them. Sending him to prison for an additional eight months, as recommended by the Probation Department, will not accomplish that goal.

2. <u>The Need for General and Specific Deterrence</u>

In this case, as in virtually every criminal case, consideration of general and specific deterrence are primary considerations in fashioning an appropriate sentence. It is respectfully submitted that both of those statutory objectives of sentencing can be achieved without imposing an additional prison sentence upon Rakeem. First, with respect to general deterrence, it is submitted that anyone capable of being deterred would be sufficiently deterred by the fact that Rakeem lost the opportunity to complete his initial prison sentence in a halfway house and will have served an additional six months in jail by the time of his sentencing. If that is not sufficient deterrence, then the additional five months that Rakeem will likely spend in jail or prison before his release if he is not allowed to return to the halfway house will provide sufficient deterrence to anyone who is capable of being deterred. It is hard to believe that imposing an additional consecutive term of eight months imprisonment, as recommended by the Probation Department, will provide any greater deterrence than the six to eleven months extra Rakeem will serve in jail on his initial sentence.

As for specific deterrence, it is respectfully submitted that Rakeem has learned a painful lesson from his mistakes in this case. First, he learned that smoking marijuana while under supervision may land him back in prison. Second, he learned that compounding his initial mistake by running away will only get him into more trouble and will undo any progress that he has made. By holding down fulltime employment at Dolla$ignMe and by applying for and obtaining an even better job at UPS, Rakeem demonstrated that he wants to live a productive and law-abiding life and that he is capable of doing so. Obviously, Rakeem will need guidance and assistance as he tries to rebuild his life at the end of his sentence. What he certainly does not need to deter him from committing further crimes is an additional consecutive term of incarceration.

### 3. The Need to Provide the Defendant with Needed Training Medical Care, and Correctional Treatment

Rakeem has spent most of the past ten years in prison and thus, whatever correctional treatment that the Bureau of Prisons is capable of providing likely has already been provided. Certainly, imposing a consecutive sentence of eight months, as recommended by the Probation Department, is not going to provide Rakeem with significant correctional treatment different or better than what he has already received. As for needed training, there is no doubt that Rakeem would benefit from life skills and vocational training and from drug treatment of the type that the Probation Department is eminently capable of providing. Indeed, the sooner that Rakeem can begin to participate in the types of training and treatment that the Probation Department can provide, the better off he will be and the more likely he is to be successful in his transition back into society. Ultimately, it is the desire of all those involved in the criminal justice system that defendants learn from their mistakes and be given an opportunity to rehabilitate themselves and become law-abiding and productive citizens. The best way to achieve that goal in this case is to sentence Rakeem to time-served and a significant term of supervised release. Such a sentence hopefully will enable Rakeem to gain the skills necessary to rebuild his life and help him avoid the mistakes of his past.

Finally, in considering what sentence is appropriate, the Court should consider Rakeem's conditions of confinement and the lack of adequate medical care at BOP facilities. On April 10, 2023, a group of inmates from Jersey City brutally attacked a group of inmates from New York City at the Hudson County Jail, where Rakeem is incarcerated pending sentencing. Rakeem was stabbed in the head and in the back and experienced a loss of feeling and mobility in one of his hands after this brutal, unprovoked attack. He was seen by a nurse at the facility but was denied any meaningful medical evaluation or treatment until counsel and the Government interceded with the prison authorities to obtain medical treatment for him. Although the doctor he was finally allowed to see determined that his wounds were superficial, and although it is likely that the symptoms he experienced resulted from the stress and anxiety of the attack rather than the physical injuries he suffered, the brutal conditions of confinement Rakeem has experienced, including a substantial and unwarranted lack of access to adequate medical treatment in the aftermath of an attack, are nevertheless worthy of significant consideration when determining what sentence to impose. These considerations, too, strongly support a sentence of time served.

Hon. Gregory H. Woods
April 13, 2023

## Conclusion

For the reasons discussed above and based on the authorities cited herein, it is respectfully requested that the Court temper justice with mercy and impose a sentence of time-served upon Rakeem Wilson. Such a sentence would achieve all of the statutory objectives of §3553(a) and would give Rakeem the best chance at a successful life in the future.

Thank you for your consideration of this letter.

Respectfully submitted,

Avraham C. Moskowitz<br>Christopher R. Neff

cc: AUSA William Kinder (by email)